### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

# AT AUGUSTA,

## JUNE TERM, 1855.

Present—JOSEPH H. LUMPKIN, ⎫
EBENEZER STARNES, ⎬ *Judges.*
HENRY L. BENNING. ⎭

---

No. 19.—Wm. I. Way, plaintiff in error, *vs.* Richard J. Arnold, defendant in error.

[1.] If a deed is made, referring to the land conveyed as having such shape, marks and boundaries as is represented by a plot of re-survey made the     day of     as by reference to said plot will more fully appear, parol evidence is admissible to identify the re-survey.

[2.] A witness cannot, by the subsequent voluntary creation of an interest, without the concurrence or assent of the party, deprive him of the benefit of his testimony, if the interest were acquired wantonly or fraudulently.

[3.] The pendency of a suit cannot prevent third persons from transacting business, *bona fide,* with one of the parties; and if an interest, in the event of the suit, is thereby acquired, the common consequence of law must follow: that the person so interested cannot be examined as a witness for that party, from whose success he will necessarily derive an advantage. (*Pr. Ld. Ellenborough,* 3 *Camp.* 381.)

[4.] Where a person is called as an original witness to some transaction or agreement between the parties, in whose testimony they both have a common interest, it seems to be agreed, that it shall not be in the power of either of the witness or of one of the parties, to deprive the other of his testimony, by reason of any interest subsequently acquired, even though it

were acquired without any such intention on the part of the witness or of the party: *Aliter*, where the witness was not the agent of both parties, or was not called as a witness of the original agreement or transaction.

[5.] After the Jury have retired to their room for consultation, they are not entitled to have sent out to them a plot, exhibiting several marked lines, some of which are legal, and were admitted in evidence, and others illegal, and therefore rejected.

[6.] A conveyance to land, which is held at the time *adversely* by a third person, is contrary to the Statute of *VIIIth Henry* against maintenance, and void.

[7.] Under modern conveyances, with or without warranty, title to land subsequently acquired, does not pass to the grantee by *estoppel*.

[8.] Are not our Registration Acts a virtual repeal of the doctrine of *estoppel?* *Quere.*

Ejectment, in Bryan Superior Court. Tried before Judge HOLT, April Term, 1855.

This action was brought by Way against Arnold. The former was the owner of a tract of land known as *Silk Hope;* the latter was the owner of a tract of land adjoining, known as *Sedgefield.* Both claimed title under Edward Pyncheon. The deed from Pyncheon to Way was dated 2nd April, 1844, and conveyed a tract of land " known as Silk Hope, bounded on the north by the Great Ogechee River ; east by the lands of Richard J. Arnold, Esq. ; south by Major George M. Waters, and west by Col. Lewis Morris, having such shapes, marks and boundaries, both natural and artificial, as is represented by a plot of re-survey, made the      day of      as by reference to said plot will more fully appear." No plot was attached.

On 8th January, 1845, Lewis Morris conveyed Sedgefield to Edward Pyncheon ; and on 31st March, 1845, Pyncheon conveyed it to Richard J. Arnold. The dispute arose as to the dividing line between *Sedgefield and Silk Hope.*

On the trial of this cause, it appeared that Arnold, in order to obtain the testimony of *Morris,* had released him upon his warranty to Pyncheon. Plaintiff below offered in evidence the depositions of Edward Pyncheon, for the purpose of iden-

tifying a plot of re-survey, made by Zara Powers, D. S. dated 27th February, 1829, as the plot referred to in the deed from Pyncheon to Way. Defendant's Counsel objected—1st. Because Parol evidence was inadmissible to identify this plot. 2nd. Because Pyncheon, being the warrantor of Way, and being released upon his liability as warrantor of Arnold, was an interested witness until released.

The Court below excluded the testimony on the first ground, without deciding the last; and to this decision plaintiff's Counsel excepted. Other exceptions were filed to other decisions, but all dependent on this, except the following:

One Hughes, the County Surveyor, made a plot of survey of the *Silk Hope* tract. All except one line, was based upon the re-survey excluded as above. The plot was admitted as to that line only. The Jury requested to have this plot in their room. The Court refused the request, and exceptions were filed.

On these exceptions error has been assigned.

MILLEN, for plaintiff in error.

WARD, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This was an action of ejectment, brought by William J. Way, against Richard J. Arnold, to recover a few acres of land in Bryan County. The plaintiff and defendant are contiguous owners of two tracts, the one known as Silk Hope, the other as Sedgefield. They mutually bound each other—the former situated on the east and the latter on the west—and the suit between these parties, has originated in a dispute or difference as to the true line between these two plantations. It is admitted, and abundantly shown by the testimony, that an old canal or ditch, which runs from the hill to the creek, once constituted the dividing line between the rice-fields of the Silk Hope and the Sedgefield places. But it is insisted, that in

the course of the various conveyances which have been subsequently made, the original line has been changed and another substituted in its place. Confine the plaintiff to the ancient boundary, and the case is with the defendant. Establish the new line, beginning in 1844 and 1845, and Mr. Way is entitled to recover the premises in dispute.

As both plaintiff and defendant derive title from Edward E. Pyncheon, it is unnecessary to go back beyond their common grantor.

The first link in the plaintiff's chain of title, is the Sheriff's deed to Pyncheon, dated the 4th day of July, 1843, and conveying all of Silk Hope to the grantee, his heirs and assigns forever. To which no objection is made. The next is a deed from Pyncheon to Way, executed the 2d day of April, 1844, conveying Silk Hope and calling for the land of Col. Lewis Morris, (Sedgefield,) on the west, and described as "having such shape, marks and boundaries, both natural and artificial; as is represented *by* "*a plot of re-survey made the ——— day of ———, as by reference to said plot will more fully appear.*" The plaintiff next read in evidence, a deed from Lewis Morris to Edward E. Pyncheon, dated the 8th day of January, 1845, conveying the whole of the place known as Sedgefield. He then submitted to the Jury a deed to Sedgefield from Pyncheon to Arnold, dated the 31st day of March, 1845. Mr. Way then offered in evidence the testimony of Pyncheon, taken by commission, and particularly his answer to the second direct interrogatory, which is in the words following, to wit: To the second interrogatory, the witness answers—"The plot of re-survey, signed Zara Powers, D. S. and dated February 27th, 1829, and now shown to me, is the one by which I bought and sold Silk Hope." And the plaintiff moved the Court that the same might be admitted to prove that this was the plot referred to in the deed from Pyncheon to Way. To its admission, Counsel for defendant objected that it was parol proof, offered for the purpose of supplying the omissions in a deed, and that the identity of the plot could not be thus shown; and because, also, Pyncheon was an inter-

.ested witness. Whereupon, the Court excluded the testimony, not upon the ground that the witness was interested, but that the testimony was illegal. To which decision, Counsel for plaintiff excepted.

The plaintiff then offered in evidence the plot of re-survey, signed Zara Powers, D. S. together with the aforementioned proof, and moved the Court that the same might be admitted, to prove the *locus in quo*, or subject matter of the conveyance from Pynchcon to Way; and this being a dispute as to boundary, to ascertain what were the true boundaries of Silk Hope. To which being admitted in evidence, Counsel for defendant objected, and the Court excluded said testimony—Counsel for plaintiff excepting thereto.

The plaintiff then offered in evidence the said plot of re-survey, made by Zara Powers, D. S. and dated as aforesaid, and moved the Court that the same might be received as a muniment of title, and admissible before the Jury. To which being admitted in evidence, Counsel for defendant objected. And the Court, upon said objection being made, excluded the same, and Counsel for plaintiff excepted.

The said plaintiff then offered in evidence the testimony of William Hughes, County Surveyor of Liberty County, by commission, legally taken, accompanied by a plot of the dividing line between Silk Hope and Sedgefield plantations, drawn by witness, and annexed by witness to his interrogatories, and moved said Court that said testimony and plot might be received in evidence, to prove what were the true and correct, natural and artificial boundaries of Silk Hope plantation, and the true line of division between Silk Hope and Sedgefield plantations; and that witness derived his knowledge of the boundaries in a survey made at the instance of plaintiff and defendant, with the plot of re-survey mentioned above, and the title deeds of both parties placed by them in his hands, for the purpose of ascertaining said boundaries, and also to prove that the said plot of re-survey, signed Zara Powers, D. S. and dated as aforesaid, was a recognized plot of Silk Hope plant-

ation; (a copy of which testimony and plot is hereunto annexed;) to the admission of which testimony and plot, so far as it relates to the boundary derived from the re-survey signed, Zara Powers, Counsel for defendant objected, upon the ground that witness derived his knowledge of these boundaries from a survey made in accordance with the plot of Zara Powers; and said plot being ruled out, this evidence and the plot herewith offered, must be also excluded; and upon said objection being made, the Court excluded said testimony and plot, and Counsel for plaintiff excepted.

The said plaintiff then offered in evidence such portion of said testimony, and the plot aforesaid, as referred to line run according to Mr. Arnold's deed, and no objection being made, the said testimony was received. (A copy of which is hereunto annexed.)

John P. Hines was then sworn as witness for plaintiff, who testified, that when Silk Hope plantation was owned by Lewis Hines, in 1839 or '40, a half acre on the island was always claimed and used as belonging to said plantation, and has always been so regarded by the subsequent owners; that the line of boundary, relative to the balance of the premises in dispute, was always a matter of difference between the owners of Sedgefield and Silk Hope; that the land could produce sixty bushels of rice per acre, and is worth twenty dollars per acre, per annum. Counsel for plaintiff then asked witness, whether he had not always known of a plot of re-survey of Silk Hope plantation, signed Zara Powers, D. S. and dated the 27th February, 1829, and whether the plot then shown him, was not that plot? To which question, Counsel for defendant objected, and the Court sustained said objection. Counsel for plaintiff excepted.

The cause being closed, and the Jury having been charged with the cause, the Jury retired; and having been absent some time, requested that the plot, drawn by William Hughes, and partly admitted in evidence, might be sent to them; Counsel for defendant objecting thereto, the Court refused their request, and Counsel for plaintiff excepted.

Way *vs.* Arnold.

The whole of the errors assigned in this case, except the last, may be considered and disposed of together. Because, if the Court was right in refusing to admit the re-survey, as proven by Pyncheon, there was no error, of course, in ex--cluding from the Jury said plot of re-survey; the testimony of Wm. Hughes proving the boundaries, both natural and artificial, of Silk Hope plantation, and the true line of division between Silk Hope and Sedgefield ; in excluding from the Jury all the lines drawn upon the plot of William Hughes except the line drawn according to the deed of the defendant; and the testimony of John P. Hines, proving that the plot of re-survey, signed Zara Powers, D. S. dated February the 27th, 1829, and then shown to him in Court, was a recognised plot of Silk Hope plantation. If, on the other hand, the Court was wrong in excluding so much of the testimony of Edward E. Pyncheon, as identified the plot of re-survey, purporting to have been made by Zara Powers, as the one by which he bought and sold Silk Hope, all the rest of the rulings were wrong. On the first exception, therefore, hang all the balance save the last.

[1.] Was the Court right, then, in refusing to allow the re-survey to be identified by Pyncheon ? Is it too vague and indefinite to be established by *aliunde* proof? It is insisted in the argument before the Court, that when one writing refers to another, it must, if you would incorporate the one referred to into the other, and make it a part of it, so describe it as that when produced, it would identify itself. Here it is contended, that there are no marks, whatever, to distinguish this re-survey from any other. .

We have examined, with some care, the elementary treatises upon evidence, as well as the reported cases upon this subject, and the result of our investigation is, that much confusion and contradiction prevails upon this branch of the law. Attempts have been made to distinguish between patent and latent ambiguities, and the position taken is, that while the latter are susceptible of explanation by extrinsic testimony, that patent ambiguities are not. But both *Mr. Starkie and*

*Mr. Greenleaf* make so many exceptions to the rule, disallowing parol proof, to supply what is defectively expressed in the writing, that the rule itself is virtually abrogated.

Had the date of this re-survey been supplied, the objection, it seems, would be considered as removed. And yet, who does not see that there is still the same danger existing, though not to the same extent, in identifying the plot? Suppose the reference in the deed, from Pyncheon to Way, had been "to a re-survey this day delivered from the party of the first part to the grantee," who can doubt that parol evidence would be admissible what re-survey was referred to?

Take the common case put, and which all the authorities concur in holding is susceptible of parol proof, namely: where a man devises property to his cousin, A B, and he has two cousins of that name, it has never been doubted but that parol evidence will be received in such case, to explain the ambiguity, and show which of the two cousins was intended. And yet, in every such case, you make the will *pro tanto* of the testator; and it is no answer to say, so far as principle is concerned, that the uncertainty is produced by something outside of the will, and, consequently, may be explained in the same way. The truth is, you cannot execute the will without going out of it; and whenever you do this, the parol poof, and not the instrument, is the will which is set up.

*Mr. Greenleaf* says, "it is only in this mode that parol evidence is admissible (as is sometimes, but not very accurately said,) *to explain written instruments*, namely: by showing the situation of the party in all his relations, to persons and things around him; or, as elsewhere expressed, by proof of the surrounding circumstances. Thus, if the language of the instrument is applicable to several persons—to several parcels of land—to several species of goods—to several monuments or boundaries—*to several writings, or the terms be vague and general;* in all these and the like cases, parol evidence is admissible of any extrinsic circumstances, tending to show what person or persons, or what things

were intended by the party ; *or to ascertain his meaning in any other respect.*" (1. *Greenleaf's Ev.* §288.)

And the author, in the preceding section, (287) cites this case of *Bell vs. Martin,* (3 *Harrison's R.* 167,) with approbation. "So, if a contract, in writing, is made for extending the time of payment of" certain notes "held by one party against the other, parol evidence is admissible to show what notes were so held and intended." And again, in the notes— "parol evidence is admissible to show what debt was referred to in a letter of collateral guaranty. *Drummond vs. Restruan,* (12 *Wheaton,* 515.) So, to show what flats were occupied by the riparian proprietor, as appurtenant to his upland and wharf, and passed with them by deed." *Treat vs. Strickland,* (10 *Shepl.* 234.)

If these elementary *dicta* and decided cases be law, they are certainly broad enough to let in the testimony of Pyncheon, provided it be unexceptionable otherwise.

[2.] Was Pyncheon a competent witness to identify this document ? Being the common warrantor of both plaintiff and defendant, he stood indifferent between them. But in order to obtain the testimony of Lewis Morris, who sold Sedgefield to Pyncheon, with warranty, Arnold, the defendant, released Morris; and consequently, discharged Pyncheon, the subsequent warrantor; so that Pyncheon, when offered as a witness, was liable over to Way only, upon his warranty of Silk Hope; and Way refused to release him. And now, the ground is taken by Way's Counsel, that Pyncheon being originally a good witness for them, it was not in his own power, nor in the power of Arnold, to disqualify him. And there is much doctrine to be found in the books to this effect.

It originated, no doubt, in an effort, on the part of the Courts, to get round the old rule of the law, happily the rule no longer in *England,* which excludes an interested witness from testifying.

[3.] It is a mistake, however, to suppose that this doctrine is well settled, and settled, too, as contended for by Counsel

for plaintiff. It is twice referred to by Mr. *Greenleaf.* (1 *Greenleaf's Evidence,* §§167, 418.) And while he· lays down the general rule, that the witness cannot, by the subsequent, voluntary creation of an interest, without the concurrence or assent of the party, deprive him of the benefit of his testimony; yet, the learned Professor adds, that this rule admits of a qualification, turning upon the manner in which the interest was acquired. "If," says he, "it were acquired wantonly or by a wager, or fraudulently, for the purpose of taking off his testimony, of which the participation of the adverse party would *generally* be proof, it would not disqualify him." "But," quoting the language of Lord *Ellenborough* in 3 *Camp.* 381, "the pendency of a suit cannot prevent third persons from transacting business, *bona fide,* with one of the parties; and if an interest, in the event of the suit, is thereby acquired, the common consequence of the law must follow, that the person so interested cannot be examined as a witness for that party from whose success he will necessarily derive an advantage."

The rule thus laid down by *Ld. Ellenborough,* has been recognized in the Courts of several of the United States; and in *Winship vs. Bank United States,* (5 *Peters,* 529, 552,) the learned Judges of the Supreme Court were divided upon it. Believing, as we do, that it is founded in good reason, we hold that Pyncheon is disqualified without a release. Is he not interested? And can an arbitrary rule of evidence relieve him from that predicament, which excludes all other witnesses from giving testimony?

[4.] Had he been originally called to witness some transaction between these parties; and thus, creating in both of them a common interest in his testimony, there would seem to be some propriety in maintaining that it should not be in the power of the witness, himself, or of either one of the parties, to deprive the other of his testimony, by reason of an interest subsequently, acquired even though it were acquired without any such intention on the part of the witness or of the party.

But no such fact exists here.    Mr. Pyncheon was not the agent of both of these parties, nor was he called on to witness any transaction or agreement between them.    Moreover, the release here is to Morris and not to him.    Mr. Pyncheon has done nothing—Mr. Arnold has done nothing, as it respects Mr Pyncheon, directly, to render him incompetent, and thus, to deprive Mr. Way of the benefit of his testimony.    And it is not pretended but that the release of Arnold to Morris, which has operated to discharge Pyncheon upon his warranty to Arnold, was executed in the utmost good faith ; nay more, it was indispensable to the defendants' case.

Our judgment therefore is, that the Court was right in re-fusing to permit the Powers plot to be identified by the evidence of Edward E. Pyncheon, as that referred to in his deed to Way, and by which he bought and sold the Silk Hope plantation.    And consequently, was right upon the next five grounds in the assignment of errors.

[5.] Upon the last assignment, we hold the Court was right in refusing to send to the Jury the plot drawn by William Hughes and partially admitted in evidence, when requested by that body.    This plot exhibited three lines—one of which was drawn in accordance with the deed of defendant—the other two from the Powers plot, which had been excluded. Whether this paper could have been sent out, according to the practice of some of the Courts, even had it contained nothing objectionable, is doubtful.    But that it was inadmissible in the condition in which it stood, there can be no question.    One of the three lines run and marked upon it was legal, and admitted without objection ; the other had been ruled out as illegal; and it was apparent that the Jury desired the inspection of this re-survey, which was private and without notice, in reference to those very lines which had not been established.    The point is plain.

As the suit to recover this land may be renewed, provided Mr. Way can procure any other witness by whom this re-survey may be identified, or effect the same object, by relieving Mr. Pyncheon, it may be advisable to notice two posi-

tions occupied by Col. Ward, Counsel for the defendant below, and in this Court.

[6.] The first is, that conceding the re-survey to be properly proven, and that it constitutes a part of the deed from Pyncheon to Way, and operates as a conveyance to the parcel of land covered by it outside of the old boundary; still, he argues, that as Col. Lewis Morris, the then proprietor of Sedgefield, from which this strip of land is taken, held the same adversely, that the deed thereto from Pyncheon to Way was void, by the Statute of *Henry VIIIth.* against maintenance.

Whether the possession of Col. Morris was adverse to this portion of the premises, is a question of fact to be found by the Jury. If he were, we see no reason why the doctrine contended for should not apply.

[7.] Again, Counsel for the defendant in error contends, that as Mr. Pyncheon did not own any part of Sedgefield, when he sold to Way, that he could not convey title to any portion thereof to Way. To this, the learned Counsel for Way replies, that Pyncheon, having, subsequently to his sale to Way, purchased the whole of Sedgefield from Morris, that the title of Way attached forthwith to the ground in dispute; and that not only Pyncheon, but Arnold, claiming Sedgefield under him, are estopped from disputing Way's title.

This whole doctrine is most elaborately examined by *Mr. Smith*, in the 2d Volume of his *Leading Cases*, commencing at page 454, and continued *ad finem.* And the conclusion of the whole matter is, that where lands are sold by any of the modern conveyances, in which the grantor had nothing at the period of executing the deed, the title which he may subsequently acquire, does not pass to the grantee by *estoppel*; nor entitle him to recover in ejectment brought against a stranger. That a conveyance, made under such circumstances, does not debar the warrantor or his heirs, from recovering under any right or title not vested in the grantor at the time of making the conveyance; that otherwise, no estate would be safe from the fraudulent sale of an ancestor or the

prodigality of a son; that the doctrine of *estoppel* in deeds, cannot be based upon that of warranty ; that in no case can this doctrine be made to operate against a purchaser without notice and for valuable consideration ; and that if it be held in any of the States of this Union, that there can be passed to a mere stranger, by way of grant or release, or under the Statute of Uses, a full, legal title to land subsequently acquired by the grantor, but not vested in interest in him, at the time of the grant, the reason for its transmission must be sought in peculiar custom or particular legislative enactment, *and not in the Common Law, nor under the Statute of Uses.* And few things, adds the author, can be more obvious, than that without the check imposed by the principles above stated, the operation of the doctrine of *estoppel*, upon Common Law titles, could not have been endured for a year.

[8.] We are strongly inclined to the opinion, that our Registry Acts, under the modern form of conveyancing, is a virtual repeal of the doctrine of *estoppel*. At any rate, we are quite clear, that notwithstanding Pyncheon sold to Way with warranty, and afterwards bought Sedgefield of Morris, that this after acquired interest did not feed the estoppel, to use the technical jargon of the books, and pass the property in controversy, immediately to Way. If Pyncheon, upon consideration, conveyed this subsequently acquired interest, and such was his intention, Equity will decree a title to the after acquired estate, and the second grantee, Arnold, provided he purchased with notice, would be affected by said notice, and could not conscientiously hold the land in dispute.