### GILPIN v. MERCHANTS' NAT. BANK.

(Circuit Court of Appeals, Third Circuit. November 21, 1908.)

No. 9.

BANKRUPTCY (§ 407*)—DISCHARGE—GROUNDS FOR REFUSAL—MAKING "FALSE" STATEMENT.

The word "false" as used in Bankr. Act July 1, 1898, c. 541, § 14b, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended in 1903 (Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1907, p. 1026]), which

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

makes it a ground for denying a discharge to a bankrupt that he has "obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit," means more than merely erroneous or untrue, being used in its primary legal sense as importing an intention to deceive, and such a statement, in order to constitute a bar to a discharge, must have been knowingly and intentionally untrue.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 760; Dec. Dig. § 407.*

For other definitions, see Words and Phrases, vol. 3, pp. 2654, 2655.]

Petition for Revision of Proceedings of the District Court of the United States for the Eastern District of Pennsylvania, in Bankruptcy. For opinion below, see 160 Fed. 171.

J. W. Bayard, for petitioner.
H. T. Dechert, for respondent.

Before GRAY and BUFFINGTON, Circuit Judges, and ARCHBALD, District Judge.

GRAY, Circuit Judge. This is a petition by a bankrupt, to revise for error of law the decree of the United States District Court for the Eastern District of Pennsylvania, reversing the referee's report and sustaining one of the creditor-appellee's exceptions to his application for discharge. The sole exception thus sustained, was to the effect that the referee had erroneously held that the "materially false statement" in writing, mentioned in clause (3) of section 14b of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427], amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1907, p. 1026]), must, in order to constitute a bar to the discharge of the bankrupt, be intentionally or knowingly untrue. The facts of the case as summarized from the findings made by the referee, and elsewhere disclosed in the record, are as follows:

The bankrupt was engaged in the construction of buildings, at Baltimore, in places near New York City, and Philadelphia. His main office was in Philadelphia, where his books were kept by his bookkeeper. The bankrupt was chiefly engaged in the actual supervision of the building work he had in hand, and paid little or no attention to his books. He collected money, paid notes, and in a general way knew the condition and progress of each of his building contracts. He intrusted the keeping of his books to his bookkeeper, and in September, 1905, the posting of·his books was some months behind. During that month, the bankrupt went to the Merchants' National Bank, at Philadelphia, (the excepting creditor and appellee) and stated that he wished to open an account, and would require accomodations not to exceed $10,000. The bank informed him that they would like to have a statement, and gave him one of their blank forms, to be filled out and signed by him. This form the bankrupt took to his office, and there signed the same in blank, instructing his bookkeeper to fill it out and send it to the bank. He signed it in blank before it was filled out, for the reason that he was obliged to return to Baltimore without delay. He says he instructed the bookkeeper to make an exact statement for the bank, to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which the bookkeeper replied that he could not, but that he would make an approximate statement and send it to the bank. The statement was made by the bookkeeper, and upon it was written the word "approximate," and it was sent by the bookkeeper to the bank. Upon this statement, and upon a note which the bankrupt was to obtain from one Stokes, of Baltimore, as collateral, the bank extended the accommodation desired. This note was never obtained for the bank from Stokes. About October 3, 1905, and after the said statement of September 28th had been filed by the bank, the note of the bankrupt for $7,500, due 30 days after date, was discounted. After two renewals and a payment of $1,000 on account, and the further discount of a 10 days' note of $2,500, the bank, on the 9th day of February, 1906, renewed the entire amount then due, viz., $9,000, for 30 days, which is still unpaid.

The adjudication of bankruptcy was entered February 26, 1906. The approximate statement sent by the bookkeeper to the bank was materially inconsistent with the bankrupt's books, as they stood at the time the bankruptcy occurred. There is nothing in the referee's report to show how the books actually stood at the time the statement was prepared by the bookkeeper. There is no evidence that the bankrupt ever saw this statement after it was filled out, that the bank ever showed it to him, or interrogated him in regard to it, or that he ever asked to see it. This statement showed a net worth of $43,569.27. The bankrupt himself made up from his books, during the course of his examination, a statement showing that his net worth at that time was $45,698.09. This statement, however, in all its items fails to coincide with the statement made up by the bookkeeper and delivered to the bank.

The referee finds that, although the falsity of the statement sent to the bank has been proved, the fact that the bankrupt knew it to be false, or did not know it to be true, was not proved, and says:

"There is no evidence to support the contention that the bankrupt knew or had any reason to believe that the statement sent to the bank by the bookkeeper was false, or that the bankrupt intended in any way to deceive the bank."

The referee, therefore, reported that a decree of discharge of the bankrupt should be entered. To the finding of the referee, as stated, the appellee filed its exception, and the court below, after considering the same, reversed the finding of the referee and directed that an order be entered, sustaining the said objection to the bankrupt's discharge.

Section 14 of the bankrupt act prescribed the conditions upon which a discharge may be granted to the bankrupt by the court of bankruptcy in which the proceedings are depending, and provides that the court shall hear and investigate the merit of the application and discharge the bankrupt, unless he has—

"(1) committed an offense punishable by imprisonment, as herein provided; or (2) with intent to conceal his financial condition, destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained; or, (3) obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of ob-

taining such property on credit; or (4), at any time subsequent to the first day of the four months immediately preceding the filing of the petition transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed any of his property with intent to hinder, delay, or defraud his creditors; or (5) in voluntary proceedings been granted a discharge in bankruptcy within six years; or (6), in the course of the proceedings in bankruptcy refused to obey any lawful order of or to answer any material question approved by the court."

The single question of law presented for our consideration is clearly defined in the following extracts from the opinion of the court below:

"I accept and shall act upon the finding of the referee that the bankrupt either did not actually know what the statement contained, or did not know that it was materially false, and that he did not have a conscious intention to deceive the bank."

In concluding, the court said as follows:

"The other matter that may properly need a moment's consideration is the effect that should be given to the word 'false' in clause 3. In my opinion the argument for the bankrupt must rest wholly upon the conclusion that this word should bear. It is unquestionably a flexible word. Sometimes it means incorrect, or not true; sometimes it includes the idea of wickedness or fraud—as in section 29, where a false oath is evidently a corruptly false oath, such as would subject the affiant to a prosecution for perjury. That 'false' means no more in clause 3 than 'not true,' I have tried to establish in the preceding pages of this opinion, and if I have failed hitherto to give good reasons to my belief I am sure that I shall not strengthen the argument by stating them again in somewhat different words.

"The decision of the referee is reversed and the celrk is directed to enter an order sustaining the first objection of the Merchants' National Bank to the bankrupt's discharge."

Addressing ourselves to the question thus distinctly raised, it is to be remarked that of the six reasons for refusing a discharge to the bankrupt, as set forth in section 14b of the bankrupt act, the five that relate to the conduct of the bankrupt, unless we exclude the third, with which we are here concerned, all imply a willful and fraudulent act on the part of the bankrupt, or, as in the case of the sixth, a willful and intentional defiance of a lawful order of the court. And they all imply conduct that is immoral, or at least unworthy in one seeking the reward of honesty that is intended to be conferred by a discharge. In the recent case, In re A. B. Carton & Co. (D. C.) 148 Fed. 63, 66, Judge Hough in the District Court for the Southern District of New York, adopts as a terse statement of his views, the following language:

"The policy of the bankruptcy act is founded on equal rights and privileges to all creditors; it is not intended as a means to punish the bankrupt at the option of the defrauded creditor only. Discharge from debts is a matter of favor and not a matter of right. Honesty on the part of a bankrupt is rewarded by a discharge. Fraud and dishonesty are stamped with disapproval of a discharge. Contumacy on the witness stand, a previous discharge within six years, obtaining money upon false statements, and the commission of an offense punishable by imprisonment under the act, are all valid objections to a discharge, and are not limited to the defrauded creditors alone, but may be urged by any and all creditors. It is the fraudulent conduct that is aimed at, and not retaliation for the individual loss."

We fail to perceive any sufficient ground for denying to the third reason for refusing a descharge to the bankrupt, the general charac-

teristic of personal misconduct that attaches to all the others, as set forth in the said section of the bankrupt act. It would indeed be a harsh construction, and at variance with the general policy of the bankruptcy act, that would make the conduct described in clause 3 an exception in this respect to the whole category of acts which may severally deprive the bankrupt of his privilege of discharge. It is a construction which should not unnecessarily be made.

But apart from the incongruity imported into this section of the bankruptcy act by such construction, it seems to us clear that the plain language of this third clause of section 14b requires that the written statement made by the bankrupt, for the purpose of obtaining credit, etc., should be knowingly and intentionally untrue, in order to constitute a bar to the discharge of the bankrupt. In other words, "false statement" connotes a guilty scienter on the part of the bankrupt. This primary and ordinary meaning of the word "false" cannot be ignored. It is the primary meaning given in the ordinary lexicons of the English language. Webster gives as its primary meaning:—"Uttering falsehood; unveracious; given to deceit; dishonest." As an adjective, it is correlative with the noun "falsehood." To charge a person with making a false statement, is equivalent to charging him with uttering a falsehood, and imputes moral delinquency to the person so charged. It is true that the word may have a secondary meaning in certain collocations, and be merely equivalent to "untrue" or "incorrect." But this is not the ordinary or usual signification attached to the word. To charge a person with making false entries in books of account, means something more than that incorrect or untrue entries have been made, and it has been so held by the courts in the consideration of offenses of that character. The last edition of Bouvier's Law Dictionary says of the word "false," that when "applied to the intentional act of a responsible being, it implies a purpose to deceive." In Black's Law Dictionary, under the title "false," it is said: "In law, this word means something more than untrue; it means something designedly untrue and deceitful, and implies an intention to perpetrate some treachery or fraud." In a recent and well accepted publication called "Words and Phrases," the word "false" is thus defined:— "False means that which is not true, coupled with a lying intent." Wood v. The State, 18 Ga. 192, 297, 15 Am. Rep. 664. "False in jurisprudence usually imports something more than the vernacular sense of 'erroneous' or 'untrue.'"

This and other citations in the petitioner's brief, establish a jurisprudential meaning to the word "false" at variance with that adopted by the learned judge of the court below.

No good reason has been suggested why Congress should have made such an exception to the character of the acts enumerated, as severally barring the discharge of the bankrupt, by using the word "false" in some other than its primary and obvious meaning.

But it is not without significance to inquire why an incorrect statement, innocently made to one creditor, should bar the discharge of the bankrupt as to all his other debts, whatever be its effect as to the debt of that particular creditor. In re Carton & Co., supra, the court says:

"It is the act of issuing a materially false statement and the fraudulent intent of the man who issues it, that the statute seeks to punish by refusing a discharge. It should not depend upon the whim or good nature of any particular creditor to whom the false statement was made, whether the offending bankrupt should be given or refused his discharge. Any 'party in interest' who chooses to bring the wrongful act to the attention of the court, and proves that it was wrong within the meaning of the statute, is entitled so to do."

We fully concur in the meaning thus attributed to the clause in question. The bankrupt who has made to a creditor, for the purpose of obtaining credit, a false statement,—that is, one intentionally and knowingly untrue, is unworthy of the privilege of a discharge under the act, and the court will act upon information brought to it of such an act by any party in interest. It will be at once conceded on all hands, that such a bankrupt is unworthy, and should not receive the favor accorded by the law to the honest but unfortunate debtor. Some of the cases cited by the appellee conflict with the view here stated, but the weight of authority, as of reason, supports it.

We think that the court below erred in finding that the word "false" means no more in clause 3 than "not true," and the order of the said court is hereby revised in matter of law, by directing that the first specification of grounds of opposition to the discharge of the bankrupt, filed by the Merchants' National Bank, be dismissed, and that the bankrupt receive his discharge in accordance with the recommodation of the referee in that behalf.