## In re JACOBS et al.

### (Circuit Court of Appeals, Sixth Circuit.   May 8, 1917.)

### No. 2935

1. BANKRUPTCY ⬉410—DISCHARGE—TIME FOR APPLICATION.

Under Bankr. Act July 1, 1898, c. 541, § 14a, 30 Stat. 550 (Comp. St. 1916, § 9598), providing that any person may, after the expiration of 1 month and within the next 12 months subsequent to being adjudged a bankrupt, file an application for a discharge, the 12 months period runs from the expiration of 1 month from the adjudication, and an application for a discharge filed 12 months and 10 days after the adjudication is in time.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 694.]

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. BANKRUPTCY ☞404(1)—DISCHARGE—CONSTRUCTION OF STATUTE.**

As one of the great objects of the Bankruptcy Act was to release honest and insolvent debtors from their debts, the right given to secure a discharge ought to be liberally construed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 679, 681–691.]

**3. BANKRUPTCY ☞404(1)—DISCHARGE—RIGHT TO DISCHARGE.**

Under Bankr. Act. § 14b, providing that the judge shall investigate the merits of an application for discharge, and discharge the applicant unless he has committed one of the acts therein specified, the court is bound to grant the discharge, unless upon investigation it appears that the bankrupt has committed one of such offenses.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 679, 681–691.]

**4. BANKRUPTCY ☞440—REVIEW—PROPER MODE OF REVIEW.**

An order setting aside a discharge in bankruptcy is not a judgment denying a discharge, within Bankr. Act, § 25a (2), being Comp. St. 1916, § 9609, authorizing appeals from such judgments, and the appropriate remedy is by petition to superintend and revise in matter of law.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915.]

Petition to Revise Order of the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

In the matter of Michael Jacobs and another, bankrupts. On petition by the bankrupts to revise an order revoking a discharge. Reversed with directions.

Harry Hess, of Cincinnati, Ohio, for petitioners.
D. T. Hackett, of Cincinnati, Ohio, for respondent.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. An order was entered in the court below setting aside and declaring null and void a discharge in bankruptcy; and it is sought here to have the proceedings resulting in such order revised in matter of law. The petitioners, as partners in a mercantile business, filed their voluntary petition in bankruptcy March 21, 1913, and were adjudicated bankrupts on the same day. The bankrupts, April 1, 1914, filed a petition for a full discharge from all debts provable against their estate, except such as were exempted by law. An order was made on that day fixing the hearing for May 25, 1914, directing publication to be made notifying the creditors to appear and show cause why the petition should not be granted, and directing the clerk to mail to all known creditors copies of the petition and order, addressed to them at their places of residence. It is not claimed that the order was not complied with, save in a single respect which will presently be considered. On the date so fixed for the hearing an order was entered, reciting that the petitioners "appear to have conformed to all the requirements of law in that behalf," and directing that petitioners "be discharged from all debts and claims which are made provable by said acts [of Congress] against their estates, and which existed on the 21st day of March, A. D. 1913."

Later, on June 23, 1915, William Hymore, claiming to be a creditor

of the bankrupts, moved to set aside the discharge in bankruptcy on the grounds (1) that "petitioners were not entitled to a discharge," and (2) that the court had "no jurisdiction to grant said discharge at the time same was ordered." An affidavit of counsel for Hymore was offered in support of the motion, stating in effect that Hymore appears as a creditor on Schedule A (3), that his address as there given, as the bankrupts knew, was erroneous, that the creditor did not receive the notice, and that the record of the court below "fails to show that any application had previously been made" by the bankrupts, or that "an extension of time thereunder was duly granted in accordance with the Bankruptcy Act, although more than one year had elapsed since the adjudication in bankruptcy and the filing of the petition for discharge."

It is claimed for petitioners that both grounds of the motion to revoke, when considered with the supporting affidavit, were intended to charge that the order granting the discharge was obtained through fraud of the bankrupts, and that in view of section 15a of the Bankruptcy Act (Comp. St. 1916, § 9599) the court below was without jurisdiction to entertain the motion, since it was filed more than one year after the discharge was granted. This theory of fraud, however, is met by a practical disclaimer made on behalf of the creditor; and it is evident that the learned trial judge did not believe that any question of fraud was involved, for his opinion is based solely on the ground that the petition for a discharge was not seasonably filed. Since, as we have seen, the discharge was granted May 25, 1914, while the motion to revoke was not filed for more than one year thereafter, June 23, 1915, it is to be inferred that the court entertained the motion to revoke upon the theory that the discharge had been improvidently granted. If, then, we assume that the application to revoke the discharge could under the circumstances of this case be made more than a year after the discharge was granted, still, in case it was properly granted, the order annulling it should be reversed, and the discharge given its rightful force and effect.

[1] The question whether in point of time the petition for discharge was filed too late must depend upon the true meaning of section 14a. The section provides: .

"Any person may, after the expiration of one month and within the next twelve months subsequent to being adjudged a bankrupt, file an application for a discharge in the court of bankruptcy in which the proceedings are pending; if it shall be made to appear to the judge that the bankrupt was unavoidably prevented from filing it within such time, it may be filed within but not after the expiration of the next six months."

Any attempt to apply this language to the present facts is attended with difficulty. The petitioners filed their application for a discharge 12 months and 10 days after they were adjudged bankrupts. The question therefore arises whether the intent of the statute was to create a period of 11 months, or one of 12 months, within which an application for a discharge might be filed as a matter of right. It is certain that according to the terms of the act the application could not be filed at any time within the first month succeeding the adjudication; it is equally certain that the filing period is not in express

words limited to 11 months; the only period distinctly named is 12 months. Unless, then, the words associated with those thus far alluded to require the first and nonfiling month to be subtracted from the 12 months explicitly mentioned, it would seem that the open filing period was designed to comprise 12 months. Such associated words may be conveniently shown: "Any person may" file his application "after the expiration of one month and within the next twelve months subsequent" to the adjudication. The qualifying words—"the next" —may be given their natural meaning and effect by referring them to a period (12 months) commencing with the expiration of the first month "subsequent" to the adjudication; indeed, this would appear to be a more reasonable use and interpretation of the qualifying words than to treat them as intended to include the first month. According to this construction every word of the sentence is given full effect, while to include the first month would render the qualifying words unnecessary, if not meaningless. This is true, also, as applied to the last sentence of section 14a, where, subject to a showing of unavoidable delay, the judge may permit the application to be filed "within but not after the expiration of the next six months"; the "next six months" period begins to run of course with the close of the 12 months period, whether that period is to be treated as commencing with the adjudication or at the end of 1 month thereafter. It must follow, we think, that the application for the discharge was seasonably filed.

This construction is in accord with the opinion of Judge Bourquin in Re Walters, 209 Fed. 133, 134 (D. C.) and that of Judge Ray in Re Daly, 224 Fed. 263, 265 (D. C.); it is not however in harmony with the opinion of Judge Reed in Re Knauer, 133 Fed. 805 (D. C.), or that of Judge Martin in Re Holmes, 165 Fed. 225 (D. C.). In each of these four cases the facts called for a determination of the question whether the 12 months period dates from the adjudication or the close of the first month thereafter. There are other decisions, in addition to the last two cited cases, which at first view would seem to be opposed to the conclusion reached here; but the facts there involved, as we understand them, did not present the precise question which arises in the instant case. Thus, in Kuntz v. Young, 131 Fed. 719, 721, 65 C. C. A. 477 (C. C. A. 8), the question was whether a bankrupt who had failed to apply for a discharge in an involuntary bankruptcy proceeding could subsequently maintain a voluntary proceeding to secure a discharge from the debts scheduled and provable in the first proceeding and while the proceeding was still pending. The first adjudication occurred in January, 1899, and the second proceeding was not begun until April, 1903. After securing an adjudication in the second proceeding and scheduling the same debts and creditors therein as appeared in the first one, the bankrupt in July, 1903, filed a petition in the new proceeding for a discharge from these debts. It was held that his failure to apply for a discharge in the original proceeding "within twelve months after the adjudication" foreclosed his right to a discharge in the second one, and that the failure so to apply was the equivalent of "a judgment by default in favor of his creditors to the effect that he was not entitled to a discharge from their claims." It will be observed that more than 4 years were suf-

fered to pass between the first adjudication and the application for a discharge in the second proceeding. Manifestly, in view of this lapse of time, the effect of the omission to apply for a discharge in the original proceeding was precisely the same, whether the date from which the 12 months period should be reckoned was that of the adjudication therein or the end of the month immediately following; inevitably then the true date for reckoning time under section 14a was not involved in that case. Again, in Re Kuffler, 151 Fed. 12, 13, 80 C. C. A. 508 (C. C. A. 2), the facts were regarded as in effect the same as those of Kuntz v. Young, and so the ruling in that case was followed; it hardly need be added that we regard the decision in the Kuffler Case as distinguishable from the present one. In Re Fahy, 116 Fed. 239, 240 (D. C.), the late Judge Shiras ordered a petition for discharge to be stricken from the record on the ground that the court was without jurisdiction to consider it; but the petition was filed March 10, 1902, and based upon an adjudication entered January 5, 1900; thus more than 2 years had elapsed. True, in passing upon the question, the learned judge treated the 12 months period as beginning with the date of the adjudication, though it is perfectly plain that his decision must have been the same whether the date of reckoning time be treated as that of the adjudication or the end of the succeeding month; it scarcely need be said that he was not concerned with the question with which we are met in the instant case. There are still other cases to which attention has been called, but it is enough to say that our examination of them satisfies us that they are all distinguishable.

[2, 3] There are other considerations which we think strengthen our interpretation of section 14a. First, as Judge Bourquin pointed out in the Walters Case, supra, the corresponding provision of the Bankruptcy Act of 1867 (14 Stat. 517, 531, § 29; Rev. Stat. § 5108, amended by Act July 26, 1876, c. 234, 19 Stat. 102) did not contain the words "the next"; under that provision there was little or no room for doubt as to the length of the period within which the bankrupt might as matter of right apply for a discharge, and this would be true of the present provision, if the words "the next" were stricken out. If, then, any effect is to be given to those words they must operate, as already stated, to fix the length of such period at 12 months commencing with the close of the month immediately following the adjudication. Secondly, one of the two great objects of a federal bankruptcy act is to release honest and insolvent debtors from the burdens of their debts. 2 Story, Const. § 1106, p. 48. Section 14a, subject to the limitations of sections 14b and 17, was designed to accomplish that end. The language giving the right to secure a discharge in bankruptcy ought, therefore, to be liberally construed. Indeed, when an application for a discharge is seasonably filed in a District Court, the judge of the court is "bound to grant it, unless upon investigation" it appears that the bankrupt has "committed one of the six offenses which are specified" in section 14b. Bluthenthal v. Jones, 208 U. S. 64, 66, 28 Sup. Ct. 192, 52 L. Ed. 390. According to the present record the bankrupts were deserving of a discharge; and presumably, if they had complied with the requirement of the 6 months extension

privilege (section 14a) the present question would not have arisen. The only reason assigned for setting the discharge aside was the belief that it was too late to file the petition "10 days after the expiration of 12 months subsequent to the date of adjudication." We think this conclusion was erroneous.

[4] We must add that objection is taken to the remedy chosen by the petitioners to bring their case into this court. It is said that they should have appealed the cause under section 25a(2). The insistence is that the last order was a "judgment * * * denying a discharge." We cannot accept this view. The order was one setting aside a discharge previously granted, not one "denying a discharge," within the meaning of section 25a. The object of the appeal there mentioned is to provide for bringing up the facts upon which either the original grant or denial of a discharge is based. The creditor, insisting here that the remedy was by appeal, objects to a consideration of any of the facts. He relies solely on questions of law. Plainly, the appropriate remedy was one to superintend and revise in matter of law (section 24b [Comp. St. 1916, § 9608]); and this court in substance so held in Re Louisville Nat. Banking Co., 158 Fed. 403, 405, 85 C. C. A. 513. To the same effect are In re Hawk, 114 Fed. 916, 917, 52 C. C. A. 536 (C. C. A. 8); In re Ives, 113 Fed. 911, 912, 51 C. C. A. 541 (C. C. A. 6); Brady v. Bernard & Kittinger, 170 Fed. 576, 579, 95 C. C. A. 656 (C. C. A. 6); B-R Electric & Telephone Mfg. Co. v. Ætna Life Insurance Co., 206 Fed. 885, 887, 124 C. C. A. 525 (C. C. A. 8). And see Thompson v. Mauzy, 174 Fed. 611, 615, 98 C. C. A. 457 (C. C. A. 4), where an appeal under section 24a from an order refusing to set aside a discharge was dismissed.

The order setting aside the discharge must be reversed, with direction to reinstate the order granting the discharge.