In re ROSENFELD.

(Circuit Court of Appeals, Second Circuit. November 12, 1919.)

No. 14.

1. BANKRUPTCY ⊜414(3)—EVIDENCE ON OPPOSITION TO DISCHARGE SHOWING OMISSION OF LIABILITY FROM FINANCIAL STATEMENT WAS UNINTENTIONAL.

Where a bankrupt, who was illiterate, directed his bookkeeper to make up a financial statement, and the bookkeeper omitted a liability which did not appear in the books, *held* that, though the statement was furnished one who extended credit, evidence was insufficient to show that the bankrupt intentionally and willfully obtained credit on a statement which he knew was false, and hence discharge should not be denied.

2. BANKRUPTCY ⊜404(1)—STRICT CONSTRUCTION OF ACT IN FAVOR OF DISCHARGE.

The Bankruptcy Act is very liberal toward a bankrupt as to discharge, and, the purpose of the act being to release honest debtors from the burden of their debt, the act, in so far as it relates to discharge, should be given a strict construction in favor of the bankrupt.

3. BANKRUPTCY ⊜407(5)—FALSE STATEMENT MUST BE INTENTIONAL TO WARRANT DENIAL OF DISCHARGE; "FALSE."

Under Bankruptcy Act, § 14b, subd. 3 (Comp. St. § 9598), providing that the bankrupt shall be discharged, unless he has obtained money or property on credit upon a materially false statement in writing, the word "false" means more than untrue, and implies a purpose to deceive, and so, to prevent a discharge, the statement must be intentionally false.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, False.]

Hough, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Isaac Rosenfeld, bankrupt. Gross, Engel & Co. filed objections and specifications in opposition to the application for discharge. From an order granting the discharge, they appeal. Affirmed.

Rosenthal & Heermance, of New York City, for appellants.
H. Howard Babcock, of New York City, for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge. The question presented involves the right of the bankrupt to his discharge. The bankrupt, at the time of the filing of the petition against him, was in business as a manufacturing retail furrier, which amounts to little more than a workman. This work he carried on in the city of New York. He was born in Russia, and came into this country 11 years ago, and when he was 20 years of age. He does not read English, and never attended school in the United States. After working for a firm of furriers for 6 years, he entered a partnership, and in 1913 started in business for himself. On January 10, 1915, he made a general assignment, and on March 11, 1915, a petition in bankruptcy was filed against him. The schedules which he filed showed 28 creditors and the claims of unsecured creditors aggregated $3,500.

[1] On the return day of the bankrupt's application for discharge, the firm of Gross, Engel & Co. filed objections and specifications in opposition to the application. No other creditors made any objection to his discharge. The claim of Gross, Engel & Co. amounts to $761.45, and the objection alleged is that credit was obtained upon a materially false statement in writing made by the bankrupt on or about February 20, 1914, to the Fur Merchants' Credit Association, of which Gross, Engel & Co. was a member. It is said that he then made a financial statement in which he understated his liabilities and overstated his assets. A failure to keep proper books of account, and concealment and mutilation of such books with intent to conceal his financial condition was also included in the specification of objections, but this last charge was abandoned. The question whether the bankrupt is entitled to a discharge depends on whether or not the financial statement, above mentioned, was materially and intentionally false, and whether or not he obtained property from the specification creditors on credit induced by the statement.

The false statement upon which the objection to the discharge is based is the omission of an unpaid debt arising from a loan made to the bankrupt in 1913 by one Fabricant. The matter was referred to a special commissioner for examination and report. Testimony was taken at some considerable length. The commissioner in a very careful report, "made after considerable reflection," reached the conclusion that the omission of the Fabricant loan from the statement was not deliberate or intentional upon the part of the bankrupt, and that at the time it was made the bookkeeper did not know of the existence of the omitted loan. He also stated that it was not established to his satisfaction that, in view of the dealings of the parties and the relations existing between the bankrupt and the specification creditors, the credit extended by Gross, Engel & Co. to the bankrupt was induced by the statement above mentioned. This conclusion was reached by the commissioner, notwithstanding the testimony of Engel, who was in charge of the credits of his firm's customers, and who had testified that he relied upon the bankrupt's statement.

The bankrupt testified that he instructed his bookkeeper to prepare a financial statement, "just according to what the books show, what I owe, and what people owe me, just right"; that after the statement was prepared he did not read it, because he did not know how to read; that the statement was prepared by his bookkeeper; that he asked the bookkeeper whether it was all right, and was assured it was; and that he trusted the bookkeeper and signed it. He was asked if he had any intention of leaving out the statement as to his debt to Fabricant, and he replied that he had not.

The bookkeeper testified that he made out the statement, and then showed it to Rosenfeld and asked him to sign it; that Rosenfeld said, "Do you know it is all right?" and that he (the bookkeeper) replied, "It is all right," and he never questioned his honesty. Again the bookkeeper said:

"When I brought this paper or other papers to him, he didn't know anything about the figures. He would say, if this is all right, Brookman, and I

said, 'Yes; that is all right.' If I drew a check or anything, he never doubted me; he had that confidence in me to let me make the figures out."

A careful examination of the testimony has led the majority of this court, as it did the District Judge, and the special commissioner, to the conclusion that while the statement was untrue which the bankrupt made, and which the objecting creditor says he relied upon, nevertheless the omission from the statement of any mention of the debt due to Fabricant was not due to any intention to deceive. The bookkeeper, who made up the statement, knew nothing about the Fabricant debt. The transaction took place before he took charge of the books, and there was nothing on the books concerning it; and the bankrupt supposed the item was on the books, and told the bookkeeper to make up the statement from the books. Several months after the statement was signed the bookkeeper swears to a conversation he had with the bankrupt about the Fabricant debt: "I said," he testified, "you owe $2,-000;" and he said, "I do;" and I said, "I didn't see it in the books; it ought to be in the books;" and he said, "Wasn't it there when you came;" and I said, "No, it wasn't there when I came;" later on he said, "It is carelessness; when you came in here on these premises I had no bookkeeper;" and he said, "With my own money I started to do business before I opened any books; I may have explained it to you to put it down; I am not denying I owe the man anything; so I believe I put it down." And the bankrupt, when on the stand, was asked whether he had any intention of giving a false statement, and he answered: "No; it wasn't necessary for me; I had all the credit I wanted."

[2, 3] Any person who has been adjudged a bankrupt is entitled to apply for his discharge; and Bankruptcy Act, July 1, 1898, c. 541, § 14b, 30 Stat. 550 (Comp. St. § 9598), provides that the judge shall discharge the applicant unless he has—

" * * * 3. Obtained money or property on credit upon a materially false statement in writing, made by him to any person or his representative for the purpose of obtaining credit from such person."

When an application for the discharge is presented it may be opposed by a party in interest. In this case it is opposed by one from whom it is claimed that the bankrupt obtained property upon a materially false statement. That the party opposing is in this case "a party in interest" is of course conceded. The Bankruptcy Act is very liberal towards the bankrupt as to his discharge; and the act in so far as it relates to his discharge is to be given a strict construction in favor of the bankrupt. The purpose of the act is to release honest debtors from the burden of their debts.

The question then arises as to what is meant by a false statement. Does the word "false" mean simply untrue, or does it mean willfully and intentionally untrue? The answer is that the word as used in this connection means designedly untrue. Bouvier's Law Dictionary says of the word "false":

"Applied to the intentional act of a responsible being, it implies a purpose to deceive."

Black's Law Dictionary, referring to the word "false," says that—

"In law, this word means something more than untrue; it means something designedly untrue and deceitful, and implies an intention to perpetrate some treachery or fraud."

Webster's New International Dictionary defines "false representation" as "an untrue representation willfully made to deceive another to his damage."

In Gilpin v. Merchants' National Bank, 165 Fed. 607, 91 C. C. A. 445, 20 L. R. A. (N. S.) 1023 (1908), the Circuit Court of Appeals for the Third Circuit overruled the decision of the District Judge in which he held that the word "false" in the section of the Bankruptcy Act now under consideration meant no more than "not true." The opinion of the Circuit Court of Appeals was written by Judge Gray, who said:

"The bankrupt, who has made to a creditor, for the purpose of obtaining credit, a false statement—that is, one intentionally and knowingly untrue—is unworthy of the privilege of a discharge under the act, and the court will act upon information brought to it of such an act by any party in interest."

In Sallies v. Johnson, 85 Conn. 77, 82, 81 Atl. 974, 976 (Ann. Cas. 1913A, 386), it is said:

" 'False' may mean untrue, or it may mean designedly untrue, implying an intention to deceive. When applied to the representations of one inducing an act to another's injury it implies a purpose to deceive."

And see Wood v. State, 48 Ga. 192, 297, 15 Am. Rep. 664; State v. Smith, 63 Vt. 201, 210, 22 Atl. 604; Williams v. Territory, 13 Ariz. 27, 108 Pac. 243, 27 L. R. A. (N. S.) 1032; United States v. Twenty Boxes of Cheese (D. C.) 163 Fed. 369, 371; Remington on Bankruptcy (2d Ed.) vol. 3, § 2560.

In view of the conclusion, the majority of the court has reached that the omission from the financial statement made in December, 1915, of the Fabricant loan made in January, 1913, was due to the bankrupt's inability to read the statement prepared for him by his bookkeeper, and not to any intention to deceive, the order granting the discharge is affirmed.

HOUGH, Circuit Judge (dissenting). The law suggested by this record requires little comment. Falsity of statement, barring discharge, must be intentional untruth, as we have already held. In re Kerner, 250 Fed. 993, 163 C. C. A. 243.

The facts are rather interesting, for the bankrupt reveals himself as that not unknown commercial danger—an extremely intelligent man of no education, who perfectly knows how to deceive, and pleads his illiteracy as an excuse when found out. His present success is regrettable, and I dissent.