### In re SMITH.
### No. 16312.

District Court, N. D. Georgia.
April 5, 1932.

Mose S. Hayes, of Atlanta, Ga., for objecting creditors.

Harry S. McCowen, of Atlanta, Ga., for bankrupt.

UNDERWOOD, District Judge.

The objecting creditor, the Hartsfield Company, on March 20, 1930, made a loan of $375 to C. W. Bishop, and took his note therefor. The bankrupt and another, H. C. Cary, signed this note as guarantors, making at the same time, on printed forms furnished by the creditor, statements setting forth their financial condition by means of filling in certain blanks in the forms.

The creditor contends that it extended credit to said Bishop on the faith of these statements by the bankrupt and Cary, and that the statement made by the bankrupt was materially false and his discharge should be denied on this ground.

The statement signed by the bankrupt, after setting forth his name, residence, age, and other immaterial facts, was as follows: "Do you own Real Estate? Yes. Price Paid $———. Total Mortgages against it $———.

"(Note: If no definite amount is stated in answer to the next following question, it means I owe nothing whatever.)

"My total indebtedness beside the above mortgages is $100.00

"(Note: If no definite amount is stated in answer to the next question, it means that I

have not endorsed or stood security for any amount not now paid.)

!"The total amount for which I have endorsed or signed as security for others is $500.00.

"My net worth is $15,000.00."

The objecting creditor claims that the statement is false, in that the bankrupt's total indebtedness, over and above mortgages on real estate, was more than $100, and that the total amount for which bankrupt was indorser for others was more than $500.

The bankrupt admits that this statement is not entirely correct, but maintains that he made the statement in good faith without any intention to deceive, and that it did not deceive the objecting creditor.

Most of the items set out by objecting creditor as showing an indebtedness over the hundred dollars mentioned in the statement represent either first or second mortgages on the bankrupt's property, and taxes on same which became liens by operation of law and certain other debts which might constitute liens if claimed and recorded.

The bankrupt testified, and there was no evidence to the contrary, that he did not insert in the form of statement made by him, the price paid for the real estate or the total mortgages against it, since all the real estate had mortgages against it and he merely undertook to place a value on his equity which was shown in the amount of $15,000 stated as his net worth. He claims that he paid around $25,000 for these equities, and that at the time he made the statement he thought they were worth $25,000, though he placed the amount in the statement at $15,-000 to be sure not to overstate their value or misrepresent his net worth.

The evidence shows that the bankrupt did not owe a great amount over the $100 inserted in the statement for indebtednesses not covered by mortgages or liens as interpreted by bankrupt, if credence is given to his statement that he considered the indebtednesses in excess of the $100 as of the nature of liens on the property and was only undertaking in the $100 item to estimate his small personal debts about town.

For example, he explains the items due M. L. Thrower, aggregating something over $6,000, by stating that these items covered interest charges on mortgages, taxes, etc., advanced by Thrower, as real estate agent, on bankrupt's account derived from rents from the mortgaged properties, amounting from $800 to $1,000 per month, which overdrafts were in excess of the rents, but considered by bankrupt as still coming under the head of mortgages or liens on the real estate and not to be included in the $100 item of his statement, since the properties stood for them.

The bankrupt explains the error in the amount of $500, set out in the statement as the total indebtedness for which he was surety, by the statement that some of these notes were more than a year old, and he thought that they had been paid, especially one note of M. L. Thrower on which he was indorser, and which was one of a series that he had regularly paid for Mr. Thrower out of the latter's funds before bankrupt left his employment, and that he thought this note was paid by Mr. Thrower after he left his employment. Other items are explained in similar fashion.

It will be seen that the bankrupt claims that the statement made out by him did not purport to set out his entire financial condition, as some blanks were left unfilled; that he had no intention whatever to deceive, and did not deceive, the objecting creditor, since he stated truly what he honestly believed to be his net worth and the amount of unpaid notes of others which were outstanding; and that he received no benefit whatever from the transaction, and could benefit in no way by any false statement, as he was merely an accommodation endorser.

There was no evidence other than that of the bankrupt with respect to his intentions or the claim of fraud, except what might be inferred from the errors in the statement itself. While this statement appears to have been casually and carelessly made, nevertheless it did not purport to be complete, and was accepted in its incomplete form by the objecting creditor, who admitted that the credit was extended only on partial reliance upon it.

It is well established in this circuit that the "materially false statement" referred to in clause 3 of section 14b of the Bankruptcy Act, 11 USCA § 32(b) (3), "means more than untrue, erroneous, or mistaken, but means 'false' in the sense that it is 'intentionally untrue,'" Franklin v. Monning Dry Goods Co. (C. C. A. 5th) 217 F. 929, and the same construction has been placed upon these words in other jurisdictions.

The Circuit Court of Appeals for the Third Circuit held in Gilpin v. Merchants' Nat. Bank, 165 F. 607, 611, 20 L. R. A. (N. S.) 1023, that the written statement "should be knowingly and intentionally untrue, in order to constitute a bar to the discharge of

the bankrupt," and the rulings are to the same effect in Frank v. Michigan Paper Co. (C. C. A. 4th) 179 F. 776; Doyle v. First Nat. Bank (C. C. A. 4th) 231 F. 649; Aller-Wilmes Jewelry Co. v. Osborn (C. C. A. 8th) 231 F. 907; Bank of Commerce & Savings v. Matthews (C. C. A. 7th) 272 F. 263; In re Rosenfeld (C. C. A. 2d) 262 F. 876; In re Hatfield (D. C.) 18 F.(2d) 337; Farmers' Saving Bank v. Allen (C. C. A. 8th) 41 F. (2d) 208.

Not only must the statement be knowingly and intentionally untrue, but its falsity must be tested as to materiality to obtaining the credit. In re Morgan (C. C. A. 2d) 267 F. 959, 962.

I find, therefore, that the evidence in this case is insufficient to show that the statement in question was knowingly and intentionally untrue, or that the other requirements set forth in the above authorities as necessary to justify a denial of bankrupt's discharge have been met.

"The release of the honest, unfortunate, and insolvent debtor from the burden of his debts and restore him to business activity, in the interest of his family and the general public, is one of the main, if not the most important, objects of the law." Hardie v. Swafford Bros. Dry Goods Co. (C. C. A. 5th) 165 F. 588, 591, 20 L. R. A. (N. S.) 785.

Some courts have gone so far as to hold that even in cases of fraud the discharge can be withheld only as to the debt of the creditor defrauded, In re Morgan (C. C. A.) 267 F. 959, 962; In re Weitzman (D. C.) 11 F. (2d) 897; and practically all the courts hold that the Bankruptcy Act must be construed liberally in favor of the bankrupt, In re Jacobs (C. C. A. 6th) 241 F. 620; In re Rosenfeld (C. C. A. 2d) 262 F. 876; In re Reisler (C. C. A. 2d) 278 F. 618; Royal Indemnity Co. v. Cooper (C. C. A. 4th) 26 F.(2d) 585; Lockhart v. Edel (C. C. A. 4th) 23 F.(2d) 912; International Shoe Co. v. Kahn (C. C. A. 4th) 22 F.(2d) 131; In re Myers (D. C. Md.) 12 F.(2d) 623.

Furthermore, there is no question in this case but that the guaranty by the bankrupt of the note in question was purely an accommodation transaction, and that he received for himself no money, property, or credit.

The ground of objection relied on in this case is that the bankrupt obtained credit by making a materially false statement in writing respecting his financial condition. On this point the act provides that a bankrupt shall be granted his discharge "unless he has * * * (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing, or causing to be made or published, in any manner whatsoever, a materially false statement in writing respecting his financial condition."

It will be observed that the act provides that he shall be granted a discharge unless he, that is, the bankrupt, has obtained money or credit on the strength of the statement.

In my opinion, this objection to the discharge is valid only when the bankrupt has obtained money or property or credit for himself, or for some person or corporation in a transaction from which he himself will benefit. The cases where a discharge has been denied on this ground are cases where the credit was obtained, on the faith of the bankrupt's statement, for a corporation of which he was the sole or principal stockholder, and when therefore he personally benefited by the transaction.

In this case the money or credit obtained upon bankrupt's statement was for the benefit of another and not of the bankrupt, in a purely accommodation transaction, and I do not think that the objection to his discharge, based upon the ground of making a materially false statement to obtain property or credit, is valid since he did not obtain the money or credit and did not profit in any way therefrom. Levy v. Industrial Finance Corp., 276 U. S. 281, 48 S. Ct. 298, 72 L. Ed. 572; In re Charles Wright Hargrove, decided by this court November 14, 1931, 55 F.(2d) 996.

Upon the foregoing I find that the objections to the discharge in this case have not been sustained, and the discharge of the bankrupt is hereby ordered.