**In re PROUT.**

No. 44809.

District Court, S. D. California, Central Division.

Nov. 26, 1947.

Samuel Marks, of Los Angeles, Cal., for bankrupt.

L. J. Styskal, of Los Angeles, Cal., for objecting creditor.

WEINBERGER, District Judge.

Albert Prout, bankrupt herein, was adjudicated a voluntary bankrupt and thereafter filed his petition for discharge.

Objections to the discharge of the bankrupt herein were filed by Thrifty Loan and Finance Company, the grounds for such opposition being that the bankrupt made a materially false statement in writing respecting his financial condition, upon which said creditor relied, and by reason of which reliance did advance money and extend or renew credit to said bankrupt.

The Referee, after hearing on said objections, sustained the same, and denied the discharge; findings were waived.

The bankrupt here seeks a "review" of the Referee's order, although from the terminology of the Petition for Review, we are unable to ascertain in what respect bankrupt alleges the Referee has erred. The bankrupt's statement is as follows:

"That it is agreeable to the Thrifty Loan and Finance Company, the above named creditor that a discharge be granted to your petitioner eliminating from the order of discharge the claim of said creditor. That your petitioner believes that this is a type of case in which the Court has jurisdiction to make an order of this kind; that attached to this petition are a number of citations which supports the contention of petitioner that this Court has jurisdiction to make the order asked for by your petitioner."

The Referee points out in his certificate on Review that the bankrupt, in his Petition for Review, makes no objection to the findings leading to the Order disallowing his discharge. The Referee further points out that the only relief sought by the bankrupt in his Petition for Review is that he be given what the Referee mentions as a discharge known as a "split" discharge, that is, an order of discharge which will expressly exclude from its effect the claim of the objecting creditor.

In commenting upon the failure of the objecting creditor to oppose the bankrupt's request for a discharge of the type just mentioned, the Referee stated:

" * * * such an order will create a situation where the said creditor is the only

remaining existing creditor of the bankrupt. * * * The reason is quite obvious. The creditor is not concerned with a moral urge to 'police' bankrupt estates but is motivated rather by a desire to protect its claim, and if after making and supporting his objection he can be lenient and humanitarian and consent to the discharge provided his claim is excepted, he, of course, has accomplished a greater personal objective than he would secure if the discharge was denied."

The Referee continues:

"It is to be admitted that a very convincing argument can be presented both by the bankrupt and the objecting creditor for the making of such an order and since they are the only ones before the court there is admittedly a strong urge to grant such a discharge. * * *

"The danger of the situation can be clearly seen if we assume that the trustee was the objecting creditor where the ground of objection is that a false financial statement was given to one particular creditor. Since the trustee represents all creditors he must insist that the interests of all creditors be protected equally and without discrimination and he would have to insist that the discharge be denied as to all creditors; not as to any favored creditor.

"If the practice of making split discharges were adopted it would be only a short step to a condition where discharge would be granted, with a reservation of those creditors, who called to the attention of the court, the derelictions of the bankrupt.

"The objections to the discharge in the main as contained in Section 14c refer to acts or a course of conduct of the bankrupt of a reprehensible nature which stamps him as a person unworthy of a discharge in bankruptcy—acts which involve unfair dealing and are reprehensible within themselves against the commercial world as well as against the individual creditors."

The bankrupt cites as authority for his position the following cases: In re Morgan, 2 Cir., 267 F. 959; In re Weitzman, D.C., 11 F.2d 897; In re Zeiler, D.C., 18 F.Supp. 539; Thummess v. Von Hoffman,

3 Cir., 109 F.2d 291, and In re Pfister, 315 U.S. 795, 62 S.Ct. 915, 916, 86 L.Ed. 1196.

In Re Morgan, 2 Cir., 1920, 267 F. 959, cited by the bankrupt, the objections to discharge, sustained by the District Court, specified that the bankrupts obtained money or property on credit upon a false statement made for the purpose of obtaining credit. The objecting creditors had purchased some stock, and claimed the false statement was the representation of ownership of certain underlying securities and the promise by the organization managers to deliver stock in the future. Section 14, sub. b(3), of the Bankruptcy Act, 11 U.S. C.A. § 32, sub. b(3), then in effect now section 14, sub. c(3), provided that the discharge should not be granted if the bankrupt had obtained money or property on credit on a materially false statement in writing for the purpose of obtaining credit.

The Circuit Court, in its opinion, at page 962 of 267 F., stated:

"The argument of the appellee seems to be that the bankrupts obtained money upon the statement referred to; that they thereby obtained credit, and thereafter they obtained the money on credit upon the statement. But the language of the statute limits the refusal to discharge to obtaining money or property on credit upon a materially false statement in writing by him to any person or his representative for the purpose of obtaining credit from such person.

"It is plain that the intention of Congress was to extend not the statute to all cases of false written statements where credit happens to be given, and the thought being to confine the statute to cases where the decision to give credit was induced by the false statement. Such statement must be a financial statement, as distinguished from a mere misrepresentation.

"A debt fraudulently contracted by the bankrupt will not be released by his discharge. Therefore the debts in question, which the court below found were contracted fraudulently, may fall within the provision of the act. Congress, however, never intended to refuse a bankrupt his release from all of his debts because he had contracted one or more fraudulently. * * *

"A discharge in bankruptcy is refused when the bankrupt has made false written statements as to his financial standing and thereby obtained money or property from any one relying on the statement." (Citing cases)

The Court then stated that the testimony of the creditors showed that, if anything, they were misled in investing, and that they were not misled into giving credit, and granted the discharge.

In Re Weitzman, D.C., 11 F.2d 897, 898, the District Court granted a discharge to the bankrupt of all his debts except that of the objecting creditor. It seems clear that the District Court sustained the Referee in his finding that the bankrupt had "obtained money or property from a person on the faith of a financial statement which the creditor relied upon; such statement being in writing, and being materially false and made to the creditor or his representative."

The Court found that the bankrupt had received from the bank a renewal of existing indebtedness, and that the matured note which was unpaid had been returned to him, and held that this constituted receiving "property."

It was further stated in the opinion (page 898 of 11 F.2d):

"A creditor has the option of interposing a bar to a discharge affecting all debts, or of permitting the discharge to be granted, and of then asserting his claim on after-acquired property, on the ground that his claim was not affected by the discharge. (Citing cases) Under that section of the statute which relates to discharges it is said, in substance, that discharges may be granted against all debts, except those therein detailed, among which are such as are contracted by false representations, etc. (citing In re Carton & Co., D.C., 148 F. 63, and In re Kretz, D.C., 212 F. 784)."

The District Court then remarked that in the case of In re Kretz, "it inferentially appears that the right to object is not confined to the person defrauded but belongs to any creditor."

Continuing:

"Circuit Judge Manton, speaking for the Circuit Court of Appeals for the Second Circuit in Re Morgan, 2 Cir., 267 F. [959], 962, however, seems to hold that a creditor who did not part with any money or property by reason of the false statement may not object to the discharge; that only the creditor who did so act can prevent the bankrupt's discharge: (quoting from the opinion in the Morgan case) ' "A debt fraudulently contracted by the bankrupt will not be released by his discharge. Therefore the debts in question, which the court below found were contracted fraudulently, may fall within this provision of the act. Congress, however, never intended to refuse a bankrupt his release from all of his debts, because he had contracted one or more fraudulently. The phrase 'for the purpose of obtaining credit' contemplates a statement fitted to such purpose." ' "

Following the quotation from In re Morgan, the District Court concluded:

"Section 14b (3), Bankruptcy Act * * * would seem, therefore, to be for the use and benefit, exclusively, of the creditor who was defrauded in the manner therein photographed, and if such creditor does not object no other creditor can.

"A decree will be drawn, granting the bankrupt a discharge from all debts except that of the American Exchange National Bank."

The bankrupt in the case at bar has cited three other cases, to which we shall advert but briefly, as they do not in any way deal with the problem before us.

In Re Zeiler, D.C., 18 F.Supp. 539, the bankrupt filed two petitions in bankruptcy; in the first, he listed Resource Holding Company as a creditor. Resource opposed the discharge on the ground that the bankrupt signed a false financial statement. After a hearing relative to discharge, the bankrupt withdrew his application, and no discharge was granted in said proceeding. In the second petition, the bankrupt scheduled some of the debts covered by the first petition, including that of Resource Holding Company; the Court held that the order of discharge in the second proceeding should be amended so as to except the debts scheduled by the bankrupt in the first proceeding.

Thummess v. Von Hoffman, 3 Cir., 109 F.2d 291, and In re Pfister, 315 U.S. 795,

62 S.Ct. 915, 916, 86 L.Ed. 1196, cited by the bankrupt, are cases which have to do with the extension of time within which the bankrupt may file a petition for review from the order of a Referee and have no bearing on the question we are now considering.

We have endeavored to scan, at least briefly, every case referred to in the Citator as citing in Re Weitzman, D.C., 11 F.2d 897. We are satisfied that Judge John B. Sanborn (now Circuit Judge of the Eighth Circuit), in an opinion written while he was on the District bench, In re Kraemer, D.C., 17 F.2d 110, has explained, most effectively, that the holding in the Weitzman case was based upon a misconception of the holding in the case of In re Morgan supra. Judge Sanborn's opinion, to which we shall later refer at greater length, should have been sufficient to put an end, for all time, to the citing of the Weitzman and Morgan cases in support of the theory advanced by the bankrupt herein. We should not have devoted further effort in the matter except for the fact that on frequent occasions, the ghost of In re Weitzman (supra), shrouding the misconception of In re Morgan (supra), seems to arise as practically the sole support of a bankrupt, who, having committed an act covered by Section 14, sub. c(3) (formerly section 14, sub. b(3) of the Bankruptcy Act, would seek to avoid its stern penalty.

In several cases, among them In re Strauss, D.C., 4 F.Supp. 810, and In re Slohm, D.C., 10 F.Supp. 351, we find In re Weitzman cited where a discharge is *denied* the bankrupt under the provisions of Section 14, sub. b(3), of the Act because of his having made a false financial statement; in Morton v. Snider, 8 Cir., 20 F.2d 469, the Weitzman case is cited, among other cases, as holding that obtaining a renewal of a note constituted obtaining "property" within the meaning of the statute; and in Re Johnson, D.C., 1 F.Supp. 649, 651, In re Weitzman was cited as holding "merely that a statement may come within the bar of this section (14b (3) of the Bankruptcy Act) if made 'recklessly' 'with no honest belief that it is true.'"

We find no cases citing In re Weitzman as authority for the contention of the bankrupt in the review before us except, perhaps, In re Smith, D.C., 1 F.Supp. 847. There the court although it found the objections had not been sustained, and ordered a discharge, stated (page 849 of 1 F.Supp.) :

"Some courts have gone so far as to hold that even in cases of fraud the discharge can be withheld only as to the debt of the creditor defrauded, In re Morgan, 2 Cir., 267 F. 959, 962; In re Weitzman, D.C., 11 F.2d 897."

The holding of the court, of course, rendered its approval of In re Weitzman, if such mention can be considered approval, mere dictum.

We also have examined many cases wherein In re Morgan, supra, is cited. In most instances the opinion of Judge Manton is mentioned as authority that a false financial statement within the meaning of Section 14, sub. b(3) (now section 14, sub. c(3) must be distinguished from false representations within the meaning of Section 17 of the Act, 11 U.S.C.A. §§ 32, sub. b(3), 35. We believe that Judge Sanborn's interpretation of the case correctly defines the limits of its authority, and such interpretation is supported by the manner in which the opinions in Johnston v. Johnston, 4 Cir., 63 F.2d 24, and Albinak v. Kuhn, 6 Cir., 149 F.2d 108, construe its holding.

In Johnston v. Johnston, 4 Cir., 63 F.2d 24, a discharge was granted, the District Court confirmed the order granting the discharge, and the Fourth Circuit Court of Appeals affirmed the order of the District Court; in the reported opinion, the Circuit Court held in effect, that assuming the statement made by the bankrupt to be false, and also assuming it was relied upon by the creditor, it was not a false statement respecting the financial condition of the bankrupt, and thus was not a bar to his discharge. As authority for its observation (page 26 of 6 F.2d) : "'A false statement on which a bankrupt obtained money or property on credit, which will bar his discharge, under Bankruptcy Act, § 14b, Subd. 3, * * * must be a financial statement, as distinguished from a mere misrepresentation,'" the Court cited In re Morgan, 2 Cir., 267 F. 959.

In Albinak v. Kuhn, 6 Cir., 149 F.2d 108, 110, the Circuit Court of the Sixth Circuit mentioned the case of In re Morgan, 2 Cir., 267 F. 959, as being one "concerned with the materiality of representations contained in statements concededly financial."

On the other hand, we find clear authority against the contention of the bankrupt herein, expressed in the following cases:

An Iowa District Court, in 1912, In re Miller, D.C., 192 F. 730, 733, stated:

"It is urged that, if the discharge is to be denied, it should only be as to the claim of Marshall Field & Co. from whom the credit was obtained upon such statement. The statute does not so read. (quoting statute) "The making by a bankrupt of a materially false statement in writing to any person for the purpose of obtaining property on credit, and upon which statement property is so obtained, prevents the granting of a discharge; and the objections may be interposed by any party in interest."

In re Kraemer, D.C., 17 F.2d 110, the trustee, with authority of the creditors, interposed objections to the bankrupt's discharge on the ground that he had obtained credit upon materially false statements in writing, made by him respecting his financial condition.

The opinion of the District Court recites, in part (page 111 of 17 F.2d):

"Some suggestion has been made that the two creditors mentioned are the only ones who can take advantage of the obtaining of credit by these false statements; that the findings of the referee on this subject do not justify his conclusion that the bankrupt is not entitled to a discharge. He finds that both creditors have proved and filed their claims, specifying the amount of each. 'Section 14b is addressed to the bankruptcy court only, and is not for the benefit of any particular creditor or class of creditors, and by its express terms may be invoked on any application for discharge by the trustee or other party in interest to entirely defeat the discharge.' (citing) Collier on Bankruptcy (13th Ed.) vol. 1, p. 550.

"The exemption from discharge is allowed in favor of provable debts. Friend v. Talcott, 228 U.S. 27, 40, 33 S.Ct. 505, 57 L.Ed. 718. See also: In re Kretz, D.C., 212 F. 784; In re Harr, D.C., 143 F. 421; In re Miller, D.C., 192 F. 730; In re Shaffer, D.C., 169 F. 724; In re Feinberg, D.C., 287 F. 254; In re Guilbert, D.C., 154 F. 676; In re Levey, D.C., 133 F. 572; Gilpin v. Mer. National Bank, 3 Cir., 165 F. 607, 20 L.R.A.,N.S., 1023, 1027. In the last case, the court says: 'It is the act of issuing a materially false statement, and the fraudulent intent of the man who issues it, that the statute seeks to punish by refusing a discharge. It should not depend upon the whim or good nature of any particular creditor to whom the false statement was made, whether the offending bankrupt should be given or refused his discharge. Any "party in interest" who chooses to bring the wrongful act to the attention of the court, and proves that it was wrong within the meaning of the statute, is entitled so to do.'

"The only case I can find to the contrary is In the Matter of Max Weitzman, D.C. Tex., 6 Am.Bankr.R. (N.S.) 427, 11 F.2d 897. There the court holds that the provisions of Bankr. Act § 14b, subd. 3 (Comp. St. § 9598 [11 U.S.C.A. § 32, sub. b(3)]), are for the sole benefit of the creditor defrauded. He bases this conclusion on In re Morgan, 2 Cir., 267 F. 962, from which is quoted the following: 'A debt fraudulently contracted by the bankrupt will not be released by his discharge. Therefore the debts in question, which the court below found were contracted fraudulently, may fall within this provision of the act. Congress, however, never intended to refuse a bankrupt his release from all of his debts because he had contracted one or more fraudulently. The phrase "for the purpose of obtaining credit" contemplates a statement fitted to such purpose.'

"A close examination of the case will show that the court, in using this language, was referring to debts fraudulently contracted, other than those based upon a materially false statement made to obtain money or property on credit. * * *

"The application for the discharge of the bankrupt is denied."

In re Henahan, D.C., 32 F.Supp. 278, a District Court of the Seventh Circuit con-

sidered a motion of the bankrupt to have the order denying discharge amended to provide that the bankrupt "is denied a discharge from those debts where objections have been filed and sustained." The objections had been sustained on the ground that the bankrupt had obtained money or credit from certain creditors by making in writing a materially false statement respecting his financial condition. The bankrupt cited In re Morgan, 2 Cir., 267 F. 959, and In re Weitzman, D.C., 11 F.2d 897.

The District Judge in the Henahan case, in rendering his opinion, stated (32 F.Supp. p. 279):

"There is language in the opinion of Judge Manton In re Morgan, supra, to sustain the bankrupt's contention. Judge Manton said (267 F. 962), 'Congress, however, never intended to refuse a bankrupt his release from all of his debts because he had contracted one or more fraudulently.' This statement was mere dictum not called for by any of the issues in the case, and I cannot agree with Judge Manton in his interpretation of the provisions of the Bankruptcy Act concerning discharges, even though he was followed by Judge Atwell, re Weitzman, supra."

The Bankruptcy Act of 1898, Section 14, sub. c, as amended (formerly section 14, sub. b(3)), 11 U.S.C.A. § 32, sub. c, is then quoted by the District Judge in his opinion, followed by this observation:

"This section provides for discharge from all debts or none. It does not provide for discharge from some debts but not others. As to the acts mentioned in each of the numbered clauses except (3) the meaning clearly is that if the bankrupt was guilty of those acts the denial of the discharge applies to all debts. If Congress had intended that the making of the false statements mentioned in (3) should prevent a discharge only as to the debts contracted on the faith of the false statements, it would have said so.

"I must hold that in this case the bankrupt was not discharged from *any* of his debts and his motion to amend the order must be denied." (Emphasis supplied)

In re Walton, D.C., 51 F.Supp. 857, 858, it was said:

"Furthermore, other creditors were entitled to have their claims kept alive as against the bankrupt if it were established that he had committed such frauds as to deny him the right of discharge from his debts."

We therefore sustain the order of the Referee herein denying to the bankrupt a discharge as to his debts, including that of the objecting creditor.